## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ANA CAROLINA ALONSO,                                    CASE NO.:

       Plaintiff**,**

    v.                                                **PLAINTIFF DEMANDS**
                                                        **A TRIAL BY JURY**

ALL PHASE SOLUTIONS, LLC;
SALAH RABAH, in his individual capacity;
SHERI RESNICK, in her individual capacity;
FERNANDO LOPEZ, in his individual capacity;
and HEATHER CROUCH, in her individual
capacity,

       Defendants.

_____/

## <u>COMPLAINT</u>

    Plaintiff, Ana Carolina Alonso (hereinafter referred to as "Plaintiff" and/or "ALONSO"), by

and through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants

ALL PHASE SOLUTIONS, LLC; SALAH RABAH, in his individual capacity; SHERI

RESNICK, in her individual capacity; FERNANDO LOPEZ, in his individual capacity; and

HEATHER CROUCH, in her individual capacity (hereinafter collectively referred to as

"Defendants" and/or "All Phase"), and alleges as follows:

## <u>NATURE OF CASE</u>

1. This employment discrimination case is about employers who subjected its
   Hispanic/Brown, Nicaraguan employee to relentless harassment, discrimination, and
   retaliation, ultimately culminating in the unlawful termination of the employee before
   further retaliating against, defrauding, and extorting the employee for raising the claims
   herein.

2. This is an action for damages and other relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"); and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and subjected to a hostile work environment based on her race/color and national origin, assault and battery, extortion, fraud, civil conspiracy, for being retaliated against by her employer solely for complaining of the ongoing discrimination, harassment, and fraud, and for Defendants' intentional or negligent infliction of emotional distress.

3. Ms. ALONSO seeks monetary relief to redress Defendants' unlawful employment practices in violation of Title VII and Section 1981. Additionally, this action seeks to redress Defendants' deprivation of Ms. ALONSO's personal dignity and her civil right to pursue equal employment opportunities and access to the courts, as well as Defendants intentional or negligent infliction of emotional distress.

4. Throughout the course of her employment, Plaintiff ALONSO found herself at the center of a hostile work environment as part of a scheme orchestrated by Defendants to unlawfully eliminate Ms. ALONSO from her position.

5. Defendants' unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6. At bottom, Defendants are liable for subjecting Ms. ALONSO to a work environment infested with relentless discrimination and harassment and for wrongfully terminating Plaintiff because of her race/color and national origin.

## JURISDICTION AND VENUE

7. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA").

8. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and Section 1981.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiff was employed by Defendant within Miami-Dade County, Florida. Additionally, the events took place in Miami-Dade County, Florida.

## PROCEDURAL PREREQUISITES

10. Plaintiff has complied with all statutory prerequisites to file this action.

11. On or about February 20, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), against Defendant as set forth herein, Charge No. 510-2020-02488.

12. An EEOC filing automatically operates as a FCHR filing.

13. On or about January 25, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

3

14. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants.

## **PARTIES**

15. At all material times, Plaintiff ALONSO is an individual Hispanic/Brown, Nicaraguan female who is a resident of the State of Florida and resides in Miami-Dade County.

16. At all times material, Defendant ALL PHASE SOLUTIONS, LLC is a Florida Limited Liability Company duly authorized and existing by the virtues and laws of the State of Florida.

17. At all material times, Defendants All Phase employed SALEH RABAH (hereinafter referred to as "RABAH") as Chief Executive Officer.

18. At all material times, RABAH held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Ms. ALONSO.

19. At all material times, Defendant All Phase employed CARLOS MARTINS (hereinafter referred to as "MARTINS") as Chief Executive Officer.

20. At all material times, MARTINS held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including but not limited to the power to hire and fire Ms. ALONSO and the ability to direct her work.

21. From 2018 to November 1, 2019, Defendants All Phase employed HEATHER CROUCH (hereinafter "CROUCH") as Human Resources Director.

22. At all relevant times, CROUCH is an individual white, Caucasian female.

23. In or around November 2019, Defendants All Phase employed SHERI RESNICK as Human Resources Director.

24. At all relevant times, RESNICK is an individual white, Caucasian female.

25. From December 2019 through the present, Defendants All Phase employed FERNANDO LOPEZ (hereinafter "LOPEZ") as Corporate Controller.

26. At all relevant times, LOPEZ is an individual Hispanic, Mexican male.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

27. On or about September 21, 2018, Plaintiff ALONSO was hired by Defendants All Phase as "Payroll Manager." Ms. ALONSO worked out of Defendants' Miami location, where each Defendant shared office space. Employees of all three companies worked side-by-side and regularly interacted with the management of each company.

28. At all relevant times, Plaintiff was responsible for processing the payroll for Defendants All Phase.

29. At all relevant times, Plaintiff shared an office with CROUCH, with only a makeshift cubicle wall separating their workspaces. Consequently, Plaintiff could easily hear CROUCH at all times of the day, and vice versa.

30. Until December 2019, Plaintiff ALONSO reported to her direct supervisor, KIMBERLY BREAREY (hereinafter referred to as "BREAREY"), Corporate Controller.

31. As part of her job duties, Plaintiff met with BREAREY weekly to review and approve of the week's payroll, as employees of Defendants were paid on a weekly basis. Notably, Plaintiff could not authorize the payment of the payroll without the authorization of

BREAREY, who was required to enter a code into Defendants' accounting systems to initiate payment. Furthermore, as part of her job duties, Plaintiff was only responsible for processing payroll and played no role in authorizing or accounting for employee benefits.

32. From the inception of her employment, Plaintiff ALONSO was subjected to abusive, discriminatory and derogatory comments directed at her by CROUCH that referenced Ms. ALONSO's national origin and race/color. CROUCH targeted Plaintiff, as well as other Hispanic employees, almost every day with a barrage of discriminatory comments based on race/color and national origin.

33. By way of example, and not meant to be an exhaustive list, CROUCH would often speak very slowly to Plaintiff, intentionally implying that Plaintiff ALONSO did not have an adequate command of the English language. It should be noted that Ms. ALONSO is fluent in both English and Spanish but speaks with an accent.

34. By way of further example, and not meant to be an exhaustive list, on other occasions during Plaintiff's employment, CROUCH would openly shout to all employees within earshot that they could speak freely since Ms. ALONSO barely spoke English and would not understand the contents of the conversation.

35. By means of example, on one particular occasion, CROUCH, without any prompting, became very aggressive with Plaintiff and openly referred to her as a "**STUPID IMMIGRANT WITH A VERY HEAVY ACCENT**" in front of several employees, including other Hispanic employees.

36. Furthermore, during Plaintiff's third week of employment, Plaintiff reported to CROUCH as CROUCH had trained her to do. However, in response, CROUCH slammed the door in Plaintiff's face in full view of Plaintiff's coworkers.

37. Furthermore, CROUCH also made discriminatory remarks regarding Plaintiff ALONSO's food preferences. By way of example, on one occasion, Ms. ALONSO was eating her lunch at her desk when CROUCH demanded that she close her door before stating, "**YOU PEOPLE EAT THAT STUFF AND IT MAKES ME NAUSEOUS.**" Plaintiff understood this to be a derogatory and discriminatory remark about her Hispanic heritage and her supposed dietary preferences. It is notable that Ms. ALONSO was eating tuna at the time.

38. CROUCH would regularly invite the White female employees to lunch without inviting Plaintiff or any employee of color. On one occasion, as CROUCH was leaving for lunch with other non-Hispanic colleagues, she turned to MS. ALONSO and stated in a derogatory and disparaging tone, "**YOU LIKE EMPANADAS RIGHT? THAT IS WHAT YOU PEOPLE EAT. I CAN BRING YOU TWO.**"

39. Plaintiff, along with other employees including but not limited to Alicia Aguilar, complained of CROUCH's Whites-only lunches to BREAREY. BREAREY reported these concerns to RABAH and specifically stated that since CROUCH was the Director of Human Resources, it was imperative for her to invite all employees to lunch if the lunch was sponsored by Defendants. RABAH told BREAREY that he would speak with CROUCH regarding the lunches, but no corrective action was taken and CROUCH continued to host Whites-only lunches within her role as Director.

40. Moreover, CROUCH would often openly offer to buy Plaintiff food before commenting to other employees that she was "happy" to help Plaintiff because she "needed" it. Importantly, CROUCH only made such offers when RABAH was in the office and within earshot. Plaintiff understood this to be CROUCH's attempt to appease RABAH while simultaneously gaining leverage over Plaintiff that she would later use to justify her discrimination and harassment.

41. By means of further example, in or around mid-2019, Plaintiff was collecting donations for a clothing drive her church was organizing. Despite the fact that several employees, including BREARY, donated to the drive, after CROUCH donated clothing, she specifically and openly told Defendants' employees that the clothes she donated were to benefit Plaintiff personally because she required financial assistance.

42. On another occasion, CROUCH stopped Plaintiff as she was walking to her office and, in front of all the employees present, asked her if her Gucci blouse were authentic because she did not believe "people like her" could afford authentic Gucci apparel. Plaintiff was understandably embarrassed and quickly continued to her office.

43. As the months continued, whenever Plaintiff would use the restroom at Defendants, CROUCH followed Plaintiff into the bathroom, sprayed air freshener after her, and often remarked in a raised voice, "**THESE PEOPLE ARE SO DISGUSTING**." CROUCH openly detested having to share laboratories with "these people," which Plaintiff understood to mean Hispanic/Brown employees. These statements were so devastating and humiliating to Ms. ALONSO that she refrained from using the bathroom facilities for fear that CROUCH would continue to harass and discriminate against her, often causing physical discomfort.

44. CROUCH continued her harassment of Plaintiff and Hispanic employees by loudly complaining in earshot of Plaintiff, "**THESE PEOPLE BRING ALL SORTS OF SICKNESS TO THE OFFICE.**"

45. CROUCH also targeted Black/African American employees with her discrimination and harassment.

46. By further means of example, in or around October 2018, CROUCH instructed Plaintiff to create a list of employees eligible for Christmas bonuses. Plaintiff then presented the list to CROUCH, who ordered her to remove Pilar Montenegro (Hispanic/Colombian) from the list of recipients without providing any explanation. Because Plaintiff was still relatively new in her position, Plaintiff did as she was told. Notably, Pilar Montenegro tenured her resignation in December 2018 and upon information and belief, her resignation was due to the racially hostile work environment perpetrated by CROUCH.

47. By means of example and not meant to be an exhaustive list, in or around June 2019, Defendants' employee Hollie Porter arrived at Defendants' Miami location to receive job training. There, CROUCH questioned Hollie Porter's qualifications for the job and inquired about her educational background.

48. Despite Ms. Porter's representations regarding her college degree, CROUCH unilaterally contacted Ms. Porter's university to request her transcripts to confirm her status as a graduate. In doing so, CROUCH openly expressed her doubts regarding Ms. Porter's education to Plaintiff, BREAREY, and several other employees. Notably, Ms. Porter provided the requested transcripts to CROUCH.

49. By means of further example, and not meant to be an exhaustive list, in or about November 2019, Plaintiff was speaking with BREAREY in a private conversation about recent financial hardships. CROUCH interrupted the conversation and stated, "**WHY DIDN'T YOU ASK ME FOR MONEY? I HAVE LOTS OF MONEY**." Without permission or request, CROUCH then proceeded to transfer $100.00 dollars to Ms. ALONSO's personal account. Shortly thereafter, CROUCH proceeded to make comments to various coworkers regarding her "gift" to Plaintiff. Importantly, Plaintiff did not retain CROUCH's unsolicited payment and perceived this offer as an attempt to pay "her off."

50. In response to CROUCH's discriminatory and harassing comments, Plaintiff ALONSO complained first to BREARY, her supervisor. BREARY, by her own admission, attempted to counsel CROUCH regarding her comments verbally and via text message.

51. On or about September 19, 2019, after multiple failed attempts to reform CROUCH's behavior, Plaintiff elevated her complaints to RABAH and MARTINS per BREAREY's recommendation.

52. In a meeting with RABAH and MARTINS, Plaintiff complained specifically about CROUCH's discrimination and harassment of her and other employees of color and stated that she was unable to report her complaints to the Human Resources Department because CROUCH alone represented the Department.

53. In response to her complaints, RABAH promised Plaintiff and MARTINS that he would counsel and/or discipline CROUCH accordingly.

54. Upon information and belief, despite his repeated assurances, RABAH failed to take corrective action to rectify the discrimination and harassment. Rather, RABAH continued to permit CROUCH to submit Plaintiff and employees of color to CROUCH's campaign of discrimination and harassment in the workplace.

55. Upon further information and belief, Plaintiff was not the only employee who reported and/or complained of CROUCH's harassment and discrimination. Importantly, it is believed that employees Alicia Aguila, Rosie Fernandez, and Khalilah Quigley are among additional employees apart from Plaintiff who complained to BREAREY, RABAH, and/or MARTINS, regarding CROUCH's race discrimination and harassment.

56. Importantly, BREAREY herself complained of CROUCH's discrimination to RABAH and MARTINS expressly stating that she was unable to protect her subordinates from CROUCH.

57. RABAH continuously failed to take any corrective action in response to the numerous reports of CROUCH's discrimination and harassment.

58. After the complaints of discrimination and harassment from Plaintiff and her colleagues, CROUCH announced to Plaintiff and her coworkers a new policy in which all employees were required to bring their complaints directly to her and to specifically not go to RABAH. CROUCH instructed Defendants' employees to "**NOT GO TO [RABAH]**" because he had given her special authority to handle their complaints. Plaintiff and her colleagues understood this policy as creating a barrier between themselves and upper management.

59. Nevertheless, Plaintiff continued to renew her complaints regarding CROUCH to RABAH and MARTINS verbally and via e-mail.

60. Shortly thereafter, in or around October 2019, CROUCH came to work and, in front of all employees present, "gifted" Plaintiff a book entitled *How To Be Grateful* and stated, "you should read this and learn about gratitude." Plaintiff understood this to be an indirect reference to her complaints of discrimination and harassment and began to believe that her complaints would always be futile and without consequence.

61. Plaintiff complained to BREAREY and RABAH regarding the book CROUCH had given her. Again, RABAH failed to order any corrective action.

62. Upon information and belief, CROUCH, by and through RABAH, was again informed of Plaintiff's and BREAREY's complaints against her.

63. On or about October 25, 2019, CROUCH's discrimination and harassment boiled over and culminated in her assault and threats against Plaintiff, Rosie Fernandez, and BREAREY.

64. Specifically, on the morning on or about October 25, 2019, Plaintiff began her workday. Almost immediately upon her arrival, CROUCH began berating Plaintiff, accusing her of trying to get her fired. CROUCH was irate, screaming throughout the building, and getting within inches of Plaintiff's face.

65. Fearful for her safety, Plaintiff retreated to her office and texted Rosie Fernandez for help. Rosie Fernandez came out of her office to assist Plaintiff, but quickly retreated to her office after CROUCH began targeting her with the same abuse she perpetrated upon Plaintiff.

66. At this point, BREAREY reported to work. CROUCH refocused her abuse on BREAREY once she arrived, shouting that BREARY was trying "**TO GET [HER].**" Specifically, CROUCH stated that RABAH had informed her that Plaintiff and BREAREY were attempting to get her fired.

67. Each time BREAREY asked CROUCH for more information, CROUCH would scream, shout curse words, and put her face within inches of BREAREY's and Plaintiff's. During this altercation, CROUCH told BREAREY and Plaintiff that her, RABAH, and MARTINS were going to "**TAKE [THEM] DOWN.**"

68. CROUCH continued on to tell Plaintiff and BREARY that RABAH would never fire her.

69. At this point, BREAREY returned to her office while CROUCH went outside and went to Defendants' building.

70. CROUCH followed BREAREY into her office, where CROUCH threatened to "get" her.

71. CROUCH was eventually forced to leave the office but Defendants' management.

72. Later that day, Plaintiff, at the recommendation of BREAREY, recorded herself detailing her fears for her safety. In the recording, Plaintiff directed her message to RABAH and MARTINS and shared that the abuse from CROUCH that day had caused her to experience a severe panic attack and elevated blood pressure.

73. On or about October 25, 2019, Plaintiff sent this recording to RABAH and MARTINS and requested a private meeting to discuss her concerns.

74. On or about October 25, 2019, Plaintiff renewed her complaints and fears to MARTINS and RABAH in a private meeting. Specifically, Plaintiff expressed her fear of CROUCH returning to the workplace and further retaliating against her.

75. In response, MARTINS told Plaintiff in front of RABAH that she "had nothing to worry about" before turning to RABEH and prompting, "**BECAUSE SHE WON'T BE BACK, RIGHT, SAL?**"

76. RABAH agreed that CROUCH would not return to her employment with Defendants, and the meeting concluded.

77. At this point, MARTINS and SAL adopted a policy that CROUCH was forbidden from being present on Defendants' property.

78. On or about October 26, 2019, Catalina Avalos, Esq. (hereinafter "AVALOS"), counsel for Defendants, contacted BREAREY via e-mail and stated that she was inquiring about the previous day's events per RABAH's and MARTINS' instruction.

79. In response, BREAREY provided a lengthy summary of CROUCH's attack of her and Plaintiff, as well as Rosie Fernandez.

80. In her summary, BREAREY expressed the need to seek a temporary restraining order against CROUCH because of her threats to her and her son. Specifically, BREAREY stated that she was made aware of text messages exchanged between CROUCH and James "JJ" Martin, an employee at Defendants, after the altercation in which both made threats concerning BREAREY and her young child. BREAREY stated in her e-mail to AVALOS that this conversation caused her great worry, because she was aware of "JJ's" tendency to carry a concealed weapon.

81. Furthermore, BREAREY stated in her summary that since CROUCH's outburst, CROUCH had contacted several other employees to make derogatory and false statements about BREAREY's and Plaintiff's involvement in the incident. Specifically, CROUCH had contacted several employees to state that BREAREY and Plaintiff "jumped" her and physically attacked her.

82. By means of further example, in one email to employees, CROUCH called BREAREY a "fifty-six (56) year-old psychopathic liar." Importantly, BREAREY was not 56 years old at the time.

83. Because of the derogatory comments directed to her, Plaintiff, and Rosie Fernandez, BREAREY specifically requested in this e-mail that Defendants investigate and prevent CROUCH from being able to contact employees regarding the events of October 25, 2019.

84. BREAREY also stated that the employees who CROUCH continued to contact with derogatory and false statements wished to provide formal statements in the investigation of this matter but feared retaliation including termination because of CROUCH's representations that she had the authority to take such actions.

85. BREAREY continued on to state that she, Plaintiff, and the remaining employees feared CROUCH but were unable to do anything because "**SHE IS HR**."

86. Perhaps most disturbingly, BREAREY reported in this email that "all employees" requested the locks and security access codes to Defendants' worksite be changed in the wake of CROUCH's erratic and threatening behavior. BREAREY reported to AVALOS that she did not have the authority to change the master code herself but requested that it

15

be changed immediately because CROUCH possessed the code. Notably, BREAREY stated that she did not want to be alone in the workplace until such codes and locks were changed because she feared for her safety. BREAREY changed the master code to prevent CROUCH from re-entering Defendants'.

87. BREAREY concluded her email by requesting AVALOS "please take this seriously."

88. In response, AVALOS assured BREAREY that "this matter is being addressed and we are looking into the allegations," before offering to assist BREAREY in obtaining her restraining order against CROUCH.

89. AVALOS, RABEH, and MARTINS reassured Plaintiff and BREAREY that CROUCH would not return and would be terminated from Defendants.

90. On or about October 28, 2019, Plaintiff learned via RABAH that CROUCH was accusing her and BREAREY of initiating the altercation and of physically harming her during it.

91. Plaintiff and BREAREY responded by insisting neither had made physical contact with CROUCH and that CROUCH herself had initiated the altercation.

92. On or about October 29, 2019, fearing that RABAH would continue his pattern of failing to take corrective action against CROUCH, Plaintiff filed a police report, Event ID 2019-0192712, call reference no. 621, regarding CROUCH's assault with MPO Adam Whiting of the Delray Police Department.

93. Upon information and belief, BREAREY also filed a police report to document CROUCH's assault against her.

94. On or about November 1, 2019, RABAH reported to Plaintiff, BREAREY, and the rest of Defendants' employees that CROUCH had been involuntarily terminated.

95. However, upon information and belief, on or about November 1, 2019, CROUCH voluntarily resigned from her position after receiving one week of paid leave. Furthermore, CROUCH was not deemed ineligible for rehire and received a severance agreement.

96. On or about November 6, 2019, BREAREY sent an e-mail following up with AVALOS, RABAH, and MARTINS regarding their investigation into the events of October 25, 2019.

97. Specifically, BREAREY reported to AVALOS, RABAH, and MARTINS that Plaintiff had spotted CROUCH sitting in her car staring at her that morning when she arrived to work. BREAREY specifically asked if CROUCH was permitted to be on Defendants' property and if she remained employed by Defendants.

98. Further, BREAREY reported that CROUCH was still continuing to contact Defendants' employees to make derogatory and false statements about herself and Plaintiff.

99. Importantly, AVALOS did not respond to BREAREY's November 6, 2019 e-mail.

100. Conversely, RABAH did respond to Plaintiff's reports of seeing CROUCH on the worksite. RABAH dismissed the report and told both Plaintiff and BREAREY that the women were making up the allegation because CROUCH was traveling out of the state at the time.

101. In response, BREAREY asked RABAH if he was still in contact with CROUCH or to otherwise explain how he knew CROUCH was not at the worksite that morning. RABAH did not respond.

102. In or about mid-November 2019, Defendants hired Sheri Resnick (hereinafter "RESNICK") as Human Resources Director.

103. On or about November 19, 2019, BREAREY contacted RESNICK to inquire about the status of Defendants' investigation on her own volition and upon request from Plaintiff, who feared further retaliation from Defendants. AVALOS did not respond.

104. Despite Defendants' assurances that CROUCH was no longer a paid employee, Plaintiff continued to process payments from accounts payable addressed to CROUCH up to and through her eventual constructive discharge.

105. Because Plaintiff believed CROUCH had been terminated, she questioned RABAH about CROUCH's employment status. In response, RABEH told her that, despite the payments, CROUCH was no longer an employee but to continue paying her through accounts payable. Plaintiff was required to continuing making payments to CROUCH through accounts payable per this arrangement and RABAH's instructions up to and through her constructive discharge.

106. In or around December 2019, BREAREY constructively discharged as a result of CROUCH's harassment and discrimination and Defendants' failure to take any corrective action.

107. In or around December 2019, Defendants hired Fernando Lopez (hereinafter "LOPEZ") to replace BREAREY as Corporate Controller and Plaintiff's supervisor.

108. In this role, LOPEZ met with Plaintiff weekly to approve of and authorize the payroll.

109. LOPEZ often made disparaging and derogatory remarks to Plaintiff, including falsely accusing her of stealing company funds.

110. By means of example, in or around early January 2020, LOPEZ, via a program error, deleted Defendants' records for paid time off ("PTO"). When Plaintiff noticed the incorrect payments, she reported the error to LOPEZ.

111. In response, LOPEZ denied the error before instructing Plaintiff to process the payroll with the incorrect payments. Importantly, Plaintiff protested numerous times and attempted to report the error to RABAH. However, LOPEZ ultimately prevailed and approved the incorrect payments.

112. Furthermore, on or about January 31, 2020, LOPEZ requested Plaintiff assist in mailing out employees' 1099 tax form, as the deadline had arrived and he was running behind.

113. As part of the task, Plaintiff was required to purchase postage stamps with her own personal funds. Prior to doing so, Plaintiff requested LOPEZ's approval for the expenditure.

114. In response, LOPEZ yelled at Plaintiff to "**USE HER HEAD AND COMMON SENSE**" and to stop asking him for assistance regarding the project. When Plaintiff attempted to clarify that Defendants' policy required her to seek approval prior to any purchase made with personal funds that required reimbursement or to use Defendants' funds. LOPEZ shook his head and instructed Plaintiff to not come to him with a similar request in the future.

115. As a result, Plaintiff processed her reimbursement with the approval of LOPEZ.

116. Upon information and belief, in or around January 2020, Defendants rehired CROUCH as a Human Resources Consultant.

117. Plaintiff learned of CROUCH's rehiring via payments to accounts payable. The payments to CROUCH continued up to and through Plaintiff's discharge.

118. Almost immediately thereafter, Plaintiff went to RABAH to inquire as to CROUCH's status as an employee and to reiterate her fears of retaliation and for her safety because of CROUCH's prior behavior.

119. In response, RABEH denied rehiring CROUCH.

120. On or about January 29, 2020, RABAH requested Plaintiff's counseling on an employee's lawsuit seeking owed wages and benefits.

121. After researching the issue, Plaintiff informed RABAH that the payments were incorrect.

122. Furthermore, at this time, Plaintiff and BREAREY became aware of 401k reductions and profit-sharing payments that had not been deposited into Plaintiff's, BREAREY's, and participating employees' accounts.

123. Importantly, Plaintiff was not enrolled in Defendants' 401k program. Plaintiff had requested to obtain this benefit from CROUCH early on in her employment but was informed that the program was only open to upper management.

124. However, Plaintiff did participate in Defendants' profit-sharing program at all times material to this Complaint.

125. On or about February 6, 2020, Plaintiff reported the payroll issues to RESNICK via e-mail.

126. In her email, Plaintiff expressly stated that there were mistakes within the payroll that she could not fix due to a lack of authority in Defendants' payroll systems. Plaintiff stated that she did not want to be blamed or held responsible for the errors, because they were not her fault and she did not have the ability to correct.

127. Upon information and belief, RESNICK did not respond.

128. In or around February 2020, Plaintiff confronted RABAH regarding her findings of the errors in payroll.

129. In turn, RABAH insinuated and threatened that he would pursue criminal charges against her if she reported the missing payments or if she pursued her complaints of harassment and discrimination against CROUCH.

130. Specifically, RABAH referred to Plaintiff's previous criminal history as proof that his story would be believed and Plaintiff would be criminally liable in an effort to retaliate against her and prevent her from pursuing claims she is legally entitled to pursue. Upon information and belief, RABAH continues to make such representations to employees to this day.

131. In or around mid-February 2020, Plaintiff learned that LOPEZ was accusing her of orchestrating the incorrect payments regarding employees' paid time off. Plaintiff also learned that LOPEZ accused her of improperly processing the postage stamp reimbursement. Upon information and belief, LOPEZ referred to Plaintiff's criminal history as proof of her theft.

132. On or about February 20, 2020, as a result of RABAH's and LOPEZ's threats, retaliation, and harassment, combined with CROUCH's failure to receive any consequences and to maintain employment with Defendants, Plaintiff was required to constructively discharge herself from employment.

133. On or about February 20, 2020, Plaintiff filed her complaints with the EEOC.

134. Upon information and belief, in or around October 2020, after an administrative proceeding with the Department of Labor, Defendants were required to compensate their employees, including BREAREY, with the deposits that they had been wrongfully denied as part of their 401k and profit-sharing programs.

135. In further retaliation and harassment of Plaintiff, Defendants did not reimburse Plaintiff for her proper share of Defendants' profits-sharing benefits program. As of the filing of this Complaint, Plaintiff ALONSO still has not been reimbursed for her share of Defendants' profit-sharing program.

136. Upon information and belief, in or around January 2021, Defendants' management was made aware that Plaintiff intended to pursue the herein claims against Defendants in a court of law.

137. On or about March 31, 2021, in retaliation for Plaintiff pursuing the herein claims, Defendants filed a police report with the Delray Police Department alleging that Plaintiff had stolen and/or embezzled funds from Defendants while previously employed.

138. On or about April 8, 2021, Plaintiff was interviewed by the Delray Police Department regarding her alleged embezzlement. Plaintiff was informed that Defendants, by and

through RESNICK, LOPEZ, and RABAH, were pursuing criminal charges against Plaintiff stemming from her employment with Defendants.

139. Upon information and belief, BREAREY was also interviewed by the Delray Police Department regarding Defendants' police report.

140. Importantly, both BREAREY and Plaintiff denied the allegations and stated that such allegations could not be true because Plaintiff did not have the authority to authorize payments to anyone but was instead required to seek the Controller's approval and to provide proper documentation, like receipts and invoices, for any charges paid by Defendants.

141. Further, both BREAREY and Plaintiff told the Delray Police Department where to find the proper documentation for payroll, like receipts and invoices. In response, the officer shared that Defendants, by and through RESNICK, denied the existence of any such documentation.

142. Both BREAREY and Plaintiff were asked by the investigating officer why Defendants would be pursuing such claims. Both BREAREY and Plaintiff, without consultation, informed the officer that in their opinion, it was in response to Plaintiff's pending litigation against Defendants.

143. The police investigation into Defendants' allegations remains ongoing. Accordingly, Plaintiff may seek to amend her complaint to add additional counts stemming from Defendants' policy report in the future once the investigation is complete.

144. The aforementioned facts are just some of the examples of the discrimination, harassment, and retaliation Ms. ALONSO suffered.

145. Additionally, Ms. ALONSO claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

146. Defendants have established a pattern and practice of not only discrimination and harassment but also retaliation.

147. Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

148. As a result of the acts and conduct complained herein, Plaintiff ALONSO has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

149. Ms. ALONSO has further experienced severe emotional and physical distress. Ms. ALONSO suffers from increased stress and anxiety, as well as high blood pressure for which Plaintiff has sought medical treatment.  Similarly, Ms. ALONSO has trouble sleeping as a result of Defendants' conduct.  Ms. ALONSO is nervous that he will be unable to find work again given the allegations against her. However, Ms. ALONSO is determined to find work and to pursue gainful employment in a workplace that treats individuals with respect. As a result of Defendants' actions, Plaintiff ALONSO felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

150. As a result of Defendants' actions, Plaintiff ALONSO felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

151. As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

152. Defendants' actions and conduct were intentional and intended to harm Plaintiff ALONSO.

153. Plaintiff ALONSO has presented factual allegations that would permit any reasonable jury to award damages.

154. At bottom, Defendants are liable for their reckless disregard for Plaintiff ALONSO's personal dignity and his civil right to pursue equal employment opportunity and access to the courts.

155. Plaintiff ALONSO has suffered damages as a result of Defendants' unlawful employment practices.

**COUNT ONE**
*Race/Color Discrimination in violation of 42 U.S.C. § 1981*
*(against All Defendants)*

156. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

157. 42 U.S. Code § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

158. Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of Hispanic race.

159. Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to compensation, terms, conditions or privileges of her employment.

160. Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

161. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

162.  Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

163.  Defendants' harassment and highly offensive conduct to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

164.  Defendants' conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

165.  Defendants acted upon a continuing course of conduct.

166.  Defendants enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, a Hispanic individual, of the equal rights afforded to her, in violation of 42 U.S.C. §1981.

167.  Defendants violated Section 1981, and Plaintiff suffered numerous damages as a result.

168.  Plaintiff makes her claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

169.  As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

170.  As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

171.  As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT TWO
### *Retaliation in violation of 42 U.S.C. § 1981*
### *(against all Defendants)*

172.   Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows

173.   Plaintiff, as an individual of Hispanic race, was discriminated against by Defendants on account of her race, in violation of Section 1981.

174.   Plaintiff engaged in protected activity by complaining of the illegal conduct to the Defendants and opposing Defendants' unlawful actions in the instant Complaint.

175.   Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place, including exacerbated harassment and discrimination, threatening to and accusing Plaintiff of embezzlement, defrauding Plaintiff, permitting Plaintiff to be assaulted, and causing Plaintiff's ultimate unlawful constructive discharge.

176.   There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

177.   The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

178.   As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

179.   As a result of the Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

180.   As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

181.   Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

182.   Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**<u>COUNT THREE</u>**
*Race/Color Discrimination (Disparate Treatment)*
*in Violation of the TITLE VII*
*(against all Defendants)*

183. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

184. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

185.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her race/color.

186. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK treated Plaintiff differently than her peers based on her race/color, including permitting CROUCH to target Plaintiff with racially-hostile and discriminatory comments, failing to take corrective action in response to Plaintiff's numerous complaints of discrimination, permitting CROUCH to assault Plaintiff, and causing Plaintiff's wrongful constructive discharge.

187. The discriminatory and disparate treatment of Plaintiff included, but was not limited to, denying Plaintiff her profit-sharing benefits, declining to invite Plaintiff to lunch and/or work function, accusing Plaintiff of embezzlement, and constructively discharging Plaintiff.

188. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her race, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

189. Ms. ALONSO was subject to discriminatory conduct and comments during her employment with Defendants and this conduct was directed to and perpetuated upon Plaintiff because of her race/color.

190. The Defendants' constructive discharge of Plaintiff was, in whole or in part, because she was Hispanic/Brown.

191. At all times relevant, Defendants All Phase engaged in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

192. Defendants treated Plaintiff less favorably than similarly situated employees outside the protected class.

193. As a result of Defendants' violations of The Civil Rights Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

194. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

195. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

196. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

## COUNT FOUR
### *Race/Color Discrimination (Hostile Work Environment)*
### *in Violation of the Title VII*
### *(against all Defendants)*

197. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

198. The Civil Rights Act of 1964 prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

199. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same

legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

200. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK harassed Plaintiff based on her race/color, including targeting Plaintiff with derogatory and harassing comments based on her race, declining to invite Plaintiff and other Hispanic/Brown employees to lunch and/or work functions, permitting Plaintiff to endure escalating harassment despite her complaints, failing to pay Plaintiff her share of Defendants' profit-sharing benefits, permitting the assault of Plaintiff, and causing Plaintiff's wrongful constructive discharge.

201. The harassment of Plaintiff included, but was not limited to, harshly criticizing Plaintiff's performance, accusing Plaintiff of embezzlement more than one year after the end of her employment, defrauding Plaintiff, and causing Plaintiff's constructive discharge.

202. The harassing actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her race/color, Defendants intentionally harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

203. The harassing conduct was directly connected to Ms. ALONSO's race.

204. When Ms. ALONSO voiced her objections to this harassing and discriminatory treatment, not only did Defendants fail to address her concerns, but they continued the pattern of discrimination and harassment by further subjecting Plaintiff to race/color harassment, as well as informing Plaintiff's harasser of her complaints and framing Plaintiff's legitimate

reports of discrimination and harassment as Plaintiff's attempts to have CROUCH terminated, causing CROUCH's assault of Plaintiff.

205. Plaintiff did not welcome Defendants' harassing conduct or comments.

206. Defendants abused their supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. ALONSO's working environment would believe Defendants' conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

207. As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

208. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

209. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

210. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**COUNT FIVE**
*National Origin Discrimination (Disparate Treatment)*
*in Violation of the TITLE VII*
*(against all Defendants)*

211. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

212. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

213. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her national origin (Nicaraguan).

214. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK treated Plaintiff differently than her peers based on her national origin, including permitting CROUCH to target Plaintiff with racially-hostile and discriminatory comments, failing to take corrective action in response to Plaintiff's numerous complaints of discrimination, permitting CROUCH to assault Plaintiff, and causing Plaintiff's wrongful constructive discharge.

215. The discriminatory and disparate treatment of Plaintiff included, but was not limited to, denying Plaintiff her profit-sharing benefits, declining to invite Plaintiff to lunch and/or work function, accusing Plaintiff of embezzlement, and constructively discharging Plaintiff.

216. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her national origin, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

217. Ms. ALONSO was subject to discriminatory conduct and comments during her employment with Defendants and this conduct was directed to and perpetuated upon Plaintiff because of her national origin.

218. The Defendants' constructive discharge of Plaintiff was, in whole or in part, because of her national origin.

219. At all times relevant, Defendants All Phase engaged in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

220. Defendants treated Plaintiff less favorably than similarly situated employees outside the protected class.

221. As a result of Defendants' violations of The Civil Rights Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

222. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

223. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

224. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

### COUNT SIX
*National Origin Discrimination (Hostile Work Environment)*
*in Violation of the Title VII*
*(against all Defendants)*

225. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

226. The Civil Rights Act of 1964 prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

227. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

228. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK harassed Plaintiff based on her national origin, including targeting Plaintiff with derogatory and harassing comments based on her national origin, declining to invite Plaintiff and other Hispanic employees to lunch and/or work functions, permitting Plaintiff to endure escalating harassment despite her complaints, failing to pay Plaintiff her share of Defendants' profit-sharing benefits, permitting the assault of Plaintiff, and causing Plaintiff's wrongful constructive discharge.

229. The harassment of Plaintiff included, but was not limited to, harshly criticizing Plaintiff's performance, accusing Plaintiff of embezzlement more than one year after the end of her employment, defrauding Plaintiff, and causing Plaintiff's constructive discharge.

230. The harassing actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII. In subjecting Plaintiff to adverse employment action on the basis of her national origin, Defendants intentionally

harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

231. The harassing conduct was directly connected to Ms. ALONSO's national origin.

232. When Ms. ALONSO voiced her objections to this harassing and discriminatory treatment, not only did Defendants fail to address her concerns, but they continued the pattern of discrimination and harassment by further subjecting Plaintiff to harassment based on her national origin, as well as informing Plaintiff's harasser of her complaints and framing Plaintiff's legitimate reports of discrimination and harassment as Plaintiff's attempts to have CROUCH terminated, causing CROUCH's assault of Plaintiff.

233. Plaintiff did not welcome Defendants' harassing conduct or comments.

234. Defendants abused their supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. ALONSO's working environment would believe Defendants' conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

235. As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

236. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

237. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

238. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**COUNT SEVEN**
*Retaliation in Violation of the Title VII*
*(against all Defendants)*

239. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

240. Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

241. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

242. Plaintiff opposed CROUCH's discriminatory treatment by complaining to Defendants' management team about the unlawful harassment and discrimination by CROUCH.

243. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendants' employees had occurred.

244. At all times relevant, the unlawful discrimination by Defendants' employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

245. At all material times, the employers exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendants.

246. Following Plaintiff's opposition to CROUCH's conduct and her numerous complaints to Defendants, the hostility increased dramatically.

247. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK retaliated against Plaintiff, including by continuing to subject Plaintiff to harassment and discrimination, harshly criticizing Plaintiff's work performance, defrauding Plaintiff, discouraging Plaintiff from pursuing her complaints, accusing Plaintiff of embezzlement, permitting Plaintiff to be assaulted by her harasser, and ultimately causing Plaintiff's constructive discharge after she complained of and reported CROUCH's discrimination and harassment.

248. Plaintiff opposed discriminatory and harassing conduct by Defendants which is prohibited by Title VII when she complained to Defendants about CROUCH's discrimination and harassment as described and set forth above.

249. Plaintiff's complaints involved Defendants' unlawful, discriminatory and harassing actions and therefore constituted protected activity under Title VII.

250. Ms. ALONSO complained of Manager CROUCH's discrimination and harassment of her and other Hispanic/Brown employees.

251. At all times relevant, Ms. ALONSO acted in good faith and with the objective and subjective belief that Defendants' employees violated of the law and her protected rights.

252. After expressing her opposition to the unlawful discriminatory conduct, Defendants retaliated against Plaintiff by among other things, wrongfully and unlawfully constructively discharging Plaintiff's employment.

253. The adverse employment actions by Defendants were the result of Plaintiff's opposition to the discriminatory and harassing conduct to which she and her coworkers was subjected, in violation of Title VII.

254. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her national origin, race, and color, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

255. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her race/color and national origin, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

256. As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

257. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

258. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

259. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

## COUNT EIGHT-
### Race/Color Discrimination (Disparate Treatment) in Violation of Florida Statute Section §760.10
### (against all Defendants)

260. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

261. The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's race and color. § 760.10(1)(a) Fla. Stat. (2020).

262. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

263. The hostile work environment and Defendants' adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's Hispanic race/color.

264. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of her race/color with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

265. In subjecting Plaintiff to adverse employment action on the basis of her race/color, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

266. At all times relevant, Defendants, by and through its employees, intended to unlawfully discriminate against Plaintiff in the terms and conditions of her employment because of her race/color and Defendants did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her race/color in violation of the FCRA.

267. Defendants violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her race/color, of which the Defendants was fully aware of.

268. As a result of Defendants' intentional discriminatory and harassing conduct and constructive discharge of Plaintiff's employment in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

269. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.  Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

270. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

271. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

272. Plaintiff has been damaged by Defendants' illegal conduct.

**COUNT NINE-**

### *National Origin Discrimination (Disparate Treatment) in Violation of Florida Statute Section §760.10*
### *(against all Defendants)*

273. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

274. The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's national origin. § 760.10(1)(a) Fla. Stat. (2020).

275. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

276. The hostile work environment and Defendants' adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's Hispanic national origin (Nicaraguan).

277. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of her national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

278. In subjecting Plaintiff to adverse employment action on the basis of her national origin, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

279. At all times relevant, Defendants, by and through its employees, intended to unlawfully discriminate against Plaintiff in the terms and conditions of her employment because of

her national origin and Defendants did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her national origin in violation of the FCRA.

280. Defendants violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her national origin, of which the Defendants was fully aware of.

281. As a result of Defendants' intentional discriminatory and harassing conduct and constructive discharge of Plaintiff's employment in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

282. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA. Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

283. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

284. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

285. Plaintiff ALONSO has been damaged by Defendants' illegal conduct.

## COUNT TEN
### Hostile Work Environment in Violation of Florida Statute Section §760.10(1)(a)

286. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

287. The FCRA prohibits employment discrimination based on race/color and national origin, and prohibits harassment based on these protected characteristics.

288. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

289. Defendants' relentless harassment, ridicule, and humiliation over Plaintiff's objection as described and set forth above, including constant discrimination, harassing comments, threats, and Defendants' failure to take corrective action altered the terms and conditions of Plaintiff's employment, and created a hostile work environment in violation of the FCRA.

290. Defendants violated the FCRA by unlawfully constructively discharging, discriminating against, and harassing Plaintiff based her national origin and race/color, of which the Defendants was fully aware.

291. The harassment and discrimination directed at Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with her physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

292. As a result of Defendants' intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the

form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

293. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA. Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

294. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

295. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

296. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

## COUNT ELEVEN
### *Retaliation in Violation of Florida Statute Section §760.10(7)*

297. Plaintiff realleges and incorporates, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

298. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

299. Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

300. Plaintiff opposed the race/color and national origin discriminatory conduct of Defendants when she complained to BREAREY, RABAH, and MARTINS about the race/color and national origin discrimination and increasingly hostile work environment that she was subjected to as described above.

301. At all times relevant, the unlawful retaliation by Defendants towards Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the FCRA which would not have occurred but for that opposition.

302. At all times relevant, Defendants' employees acted intentionally and with reckless disregard of Plaintiff's rights protected by the FCRA.

303. At all material times, the employers exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendants.

304. Defendants' Employees/Managers/Supervisors CROUCH, RABAH, MARTINS, LOPEZ, and RESNICK retaliated against Plaintiff, including by continuing to subject Plaintiff to harassment and discrimination, harshly criticizing Plaintiff's work performance, defrauding Plaintiff, discouraging Plaintiff from pursuing her complaints, accusing Plaintiff of embezzlement, permitting Plaintiff to be assaulted by her harasser, and ultimately causing Plaintiff's constructive discharge after she complained of and reported CROUCH's discrimination and harassment.

305. As a direct and proximate result of Defendants' intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of

dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

306. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

307. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

308. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

## COUNT TWELVE
### Assault
### (as to Defendants Heather Crouch, and All Phase Solutions, LLC, only)

309. Plaintiff realleges and incorporates, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

310. On October 25, 2019, CROUCH verbally attacked and berated Plaintiff in the workplace that entailed CROUCH screaming, getting within two inches of Plaintiff's face, and making verbal threats to Plaintiff. In doing so, CROUCH intentionally and unlawfully threatened by word and/or act to commit violence against Plaintiff with the apparent ability to commit such violence.

311. CROUCH's actions evince a sufficient action capable of creating a well-founded fear of such violence being done in Plaintiff.

312. Defendant CROUCH intended to commit the act that caused Plaintiff to experience a well-founded fear of such violence occurring.

313. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or

employees, suddenly and without provocation did verbally assault Plaintiff with the apparent authority to follow through with such threats, causing the Plaintiff to sustain damages.

314. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of state and federal law, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

315. Defendants All Phase Solutions, LLC owed Plaintiff a duty to protect against such threats and assault in the workplace.

316. Defendants, by nature of its employment relationship with CROUCH, are vicariously liable for the assault at issue, and reasonable basis exists to hold Defendants liable for the assault complained of herein.

317. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

318. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

319. Plaintiff ALONSO has been damaged by Defendants' illegal conduct.

## COUNT THIRTEEN
### Civil Extortion
**(against Defendants All Phase Solutions, LLC, Sal Rabah, Fernando Lopez, and Sheri Lopez, only)**

320. Plaintiff realleges and incorporates, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

321.  Florida state law prohibits the use of verbal or written communications that maliciously threaten to accuse another of any crime or offense.

322.  Florida Statute Section § 836.05 provides: "Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

323.  Defendants violated Florida Statute Section §836.05 when they verbally communicated a malicious threat to accuse Plaintiff of embezzling funds with the intent to gain a pecuniary advantage by preventing Plaintiff from pursuing her lawful claims against Defendants and to compel Plaintiff to cease the pursuit of her claims.

324.  Defendants, by threatening to and actually accusing Plaintiff of embezzlement more than one year after her constructive discharge and within one month of learning of Plaintiff's impending plans to file the instant Complaint, violated Florida State Law and Plaintiff's rights to be free of civil extortion.

325.  That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did maliciously threaten to accuse Plaintiff

of a crime in order to obtain an unlawful pecuniary advantage, namely to prevent Plaintiff from asserting the claims herein.

326. As a direct and proximate result of Defendants' intentional retaliatory conduct in violation of Florida Statute §836.05, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

327. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under state law, warranting the imposition of punitive damages in addition to compensatory damages.

328. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under state law.

329. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**COUNT FOURTEEN**
**Civil Conspiracy**
**(against All Phase Solutions, LLC, Sal Rabah,**
**Fernando Lopez, and Sheri Resnick, only)**

330. Plaintiff realleges and incorporates, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

331. Florida law prohibits two or more persons from conspiring to commit an unlawful act or a lawful act through unlawful means that results in an injury to the plaintiff. See *Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416 (S.D. Fla. 1996).

332. The crime of civil conspiracy consists of: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts

performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137 (Fla. Dist. Ct. App. 2006) (citing *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County,* 616 So.2d 562 (Fla. 5th DCA 1993)).

333.  Defendants All Phase Solutions, LLC, RABAH, LOPEZ, and RESNICK violated Florida law when they conspired to do an unlawful act, namely extorting Plaintiff.

334.  Defendants All Phase Solutions, LLC, RABAH, LOPEZ, and RESNICK committed an overt act of the conspiracy when they filed a police report alleging Plaintiff embezzled funds beginning as early as her first week of employment.

335.  That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did conspire to commit an unlawful act and took some overt act in pursuance of this conspiracy.

336.  As a direct and proximate result of Defendants' conspiracy in violation of Florida law, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

337.  Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under state law, warranting the imposition of punitive damages in addition to compensatory damages.

338.  Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

339.  Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**COUNT FIFTEEN**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(against all Defendants)**

340. Plaintiff repeats and incorporates each and every allegation made in the above paragraphs of this complaint.

341. The conduct of the Defendants, individually and collectively, was intentional, personal in nature, retaliatory, extreme and outrageous so as to go beyond all possible bounds of decency.

342. Defendants were acting during the course of their employment when they engaged in discrimination, harassment, assault, and retaliation, among other offensive, extreme and outrageous conduct.  As a result, Defendant All Phase Solutions, LLC is vicariously liable for the acts and conduct of Defendant RABAH, CROUCH, LOPEZ, and RESNICK.

343. Such intentional, extreme and outrageous conduct caused Plaintiff to suffer humiliation, extreme embarrassment, fear for her well-being and safety, and other severe emotional distress and damages.

344. At all material times, Defendant CROUCH was acting within the scope of her employment when she assaulted Plaintiff with the intent to inflict emotional distress and did inflict emotional distress upon Ms. ALONSO.

345. As a result of Defendant CROUCH's assaults and Defendants' intentional infliction of emotional distress, Plaintiff suffered serious and permanent injuries as set forth above.

346. Defendant All Phase Solutions, LLC, as Defendant RABAH's, LOPEZ's, and RESNICK's employer, is vicariously liable for the negligence and intentional acts of Defendant RABAH, LOPEZ, and RESNICK.

347. As a direct and proximate result of Defendants' intentional infliction of emotional distress in violation of Florida law, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

348. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under state law, warranting the imposition of punitive damages in addition to compensatory damages.

349. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

350. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

**COUNT SIXTEEN**
**Negligent Infliction of Emotional Dress**
**(*in the alternative*)**
**(against all Defendants)**

351. Plaintiff repeats and incorporates each and every allegation made in the above paragraphs of this complaint.

352. The conduct of the Defendants, individually and collectively, was at minimum negligent, personal in nature, retaliatory, extreme and outrageous so as to go beyond all possible bounds of decency.

353. Defendants were acting during the course of their employment when they engaged in discrimination, harassment, assault, and retaliation, among other offensive, extreme and outrageous conduct.  As a result, Defendant All Phase Solutions is vicariously liable for the acts and conduct of Defendant RABAH, CROUCH, LOPEZ, and RESNICK.

354. Such negligent, extreme and outrageous conduct caused Plaintiff to suffer humiliation, extreme embarrassment, fear for her well-being and safety, and other severe emotional distress and damages.

355. As a result of Defendant CROUCH's assaults and Defendants' negligent infliction of emotional distress, Plaintiff suffered serious and permanent injuries as set forth above.

356. As a direct and proximate result of Defendants' negligent infliction of emotional distress in violation of Florida law, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

357. At all material times, Defendant CROUCH was acting within the scope of her employment when she assaulted Plaintiff and negligently inflicted emotional distress upon Ms. ALONSO.

358. As a result of Defendant CROUCH's assaults and Defendants' negligent infliction of emotional distress, Plaintiff suffered serious and permanent injuries as set forth above.

359. Defendant All Phase Solutions, LLC, as Defendant RABAH's, LOPEZ's, and RESNICK's employer, is vicariously liable for the negligence and intentional acts of Defendant RABAH, LOPEZ, and RESNICK.

360. Defendants' actions were grossly negligent under state law, warranting the imposition of punitive damages in addition to compensatory damages.

361. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

362. Plaintiff ALONSO has been damaged by the illegal conduct of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial, plus interests, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury an all issues to be tried.

Dated: April 26, 2021
      Miami, Florida

                                      Respectfully submitted,

                                      DEREK SMITH LAW GROUP, PLLC
                                      *Attorneys for Plaintiff*

                                    /s/
                                      Lauren Tobin, Esq.
                                      Florida Bar No. 1024850
                                      Lauren@dereksmithlaw.com
                                      701 Brickell Avenue, Suite 1310
                                      Miami, FL 33131
                                      Tel: (305) 946-1884
                                      Fax: (305) 503-6741
                                      lauren@dereksmithlaw.com